NOUVET, Syndic, v. BOLLINGER et al.

It is not a cumulation of inconsistent demands for a party seeking to recover his slave, to ask his value in the event of not being able to recover the slave himself.

Where the ancestor of a party has parted with a slave, for the express purpose of defeating the rights of creditors, an action will lie to recover the value of the slave thus sold or removed.

As a general rule, the powers of the syndics of creditors are only those of administration ; but under the authorization of the courts, he may make sales of property, and by their aid may recover damages for property destroyed or abstracted from the mass, when otherwise there would be a failure of justice.

The adjudication of a slave woman at Sheriff's sale does not pass the title to her child under ten years of age who has been neither seized, advertised nor sold.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Collens*, for plaintiff. *Johnson & Denis*, for defendant and appellant.

MERRICK, C. J. This suit has been brought to recover the slave *Ellen Shockley*, or her value, $700, and a negro girl named *Susan*, the child of a slave named *Ellen Humphrey*.

The plaintiff claims that the insolvent, *Balletin*, made a donation of the slave *Ellen Shockley* to *Mrs. Bollinger* (who had full knowledge of his insolvency), in order to place her beyond the pursuit of creditors, and avers the nullity of the act of donation, whether deemed fraudulent or not. The plaintiff also avers that said slave has disappeared from the possession of the insolvent and *Mr.* and *Mrs. Bollinger*, and petitioner verily believes was sold by *Mrs. Bollinger* for $700 to some distant purchaser.

Defendants, heirs of *Mrs. Bollinger*, admit they are not in possession of the slave *Ellen Shockley*, and deny all other allegations as to the same. *Bollinger* claims title to the girl *Susan*. He alleges, that he bought the mother of *Susan* at Sheriff's sale when the child *Susan* was but three years of age, and avers that the child became his in virtue of that sale.

The case presents the following questions of law, viz :

1. Can the plaintiff claim in the same petition the slave, and in the event of non-delivery, her value? And if so, can a suit be maintained against a party not in possession ?

2. Can the syndic sue for the value of the slave, and thus convert property into money ;

3. Did the adjudication of the mother at the Sheriff's sale have the effect of transferring the negro child under ten years of age to the purchaser of the mother?

4. Can the purchaser compel the adjudication of the child, now over the age of ten years, to himself?

I. The suit is well brought in the alternative, and there is no cumulation of inconsistent demands. The plaintiff only asks the value of the slave in the event he cannot recover the slave herself.

If the defendant's ancestor parted with the slave for the express purpose of defeating the rights of the creditors, there can be no doubt that an action will lie to recover the value of the slave so sold or removed. The action is well known in the civil law as the action *de alienatione judicii mutandi causa facta*. And so it is said concerning such sale, *itaque si alterius provinciæ hominem,*

<div style="float:left">NOUVET<br>*v.*<br>BOLLINGER.</div>

*aut potentiorem nobis, appossuerit adversarium, tenebitur.* Dig. 4, 7, 1. So Mackelday says: "Lorsque l'aliénation, qui n'est jamais rescindée elle-même, consiste en ce que le possesseur d'une chose l'aliène dans la crainte d'être actionné relativement à cette chose, celui à qui cette aliénation porte préjudice a une action *in factum* en dommages-intérêts contre celui qui aliène." Partie Générale, sec. 256, edition 1846. See also 7th Savigny, sec. 316, No. 1, to the same effect.

The action by our law is included under the general provisions of Art. 2294 of the Civil Code.

II. It is true that, in general, the powers of the syndic of creditors are only those of administration; but under the authorization of the courts, he may make sales of property. And we can see no reason why he should not also be permitted, by the aid of courts of justice, to recover damages for property destroyed or abstracted from the mass, when otherwise there would be a failure of justice. He is responsible only to the creditors for his management of the property entrusted to him, and the defendant who has alienated property which did not belong to him, has no interest in inquiring into such administration. It is sufficient for him to know that he is protected from a second recovery by the judgment.

III and IV. The child of *Ellen Humphrey* having neither been seized, advertised or sold with her mother, did not pass by the Sheriff's sale. Perhaps this might have been a ground for annulling the sale of the mother, but it certainly gave the purchaser no title to the child; and as the child is now over ten years of age, it is idle to inquire whether he could or could not have compelled the insolvent before his surrender, to have transferred the child to him also.

The judgment of the lower court orders the defendants to deliver the slave *Ellen Shockley* to the plaintiff within ten days after the notification of the judgment, and in default thereof to pay $700 and interest. Although the proof is not very satisfactory on the question of value, the defendants have no reason to complain, for they have not disclosed where the slave is. If she be in their power, they can produce her. Certain it is they ought not to derive a profit from their wrongful acts. See Acts of the Legislature of 1856, p. 180.

Judgment affirmed.

DUFFEL, J., absent.